IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

PACE INDUSTRY UNION- )
MANAGEMENT PENSION FUND, )
 )
and )
 )
BOARD OF TRUSTEES OF THE PACE )
INDUSTRY UNION-MANAGEMENT )
PENSION FUND ) Civil Action No. _____
1101 Kermit Drive, Suite 800 )
Nashville TN 37217 )
 )
Plaintiffs, )
 )
v. )
 )
WISE BUSINESS FORMS, INCORPORATED )
555 McFarland 400 Drive )
Alpharetta GA 30004 )
 )
Defendant. )

## **COMPLAINT**

Nature of Case

1. This is an action to collect withdrawal liability owed to the Plaintiff Pace Industry Union-Management Pension Fund ("Pension Fund"). The action is brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA"), as amended by the Multiemployer Pension Plan Amendment Act of 1980, 29 U.S.C. §§ 1381, et seq. ("MPPAA").

## Jurisdiction and Venue

2. This Court has subject matter jurisdiction of this action pursuant to 29 U.S.C. § 1451 because the Plaintiff Trustees are fiduciaries under ERISA seeking to enforce the obligation of the Defendant to pay withdrawal liability to the Plaintiff Pension Fund.

3. Venue is proper in this district pursuant to 29 U.S.C. § 1451(d) because the Plaintiff Pension Fund is administered in this district.

## Parties

4. Plaintiff Pension Fund is a trust fund established and maintained pursuant to Section 302(a)(5) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186(c)(5). The Pension Fund is a multi-employer employee benefit plan within the meaning of Sections 3(2) and 3(3) of ERISA, 29 U.S.C. §§ 1002(2) and (3), and is maintained for the purpose of providing pension and related benefits to eligible persons. The Pension Fund also is a multiemployer pension plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

5. Plaintiff Trustees of the Pension Fund are fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

6. Defendant Wise Business Forms, Incorporated ("Wise") is a for-profit corporation that recently purchased the assets of another for-profit corporation, Datatel Resources Corporation ("Datatel"), in accordance with the terms of an asset purchase agreement between Wise, Datatel and Datatel's President and former owner Allen J. Simon. Wise is an employer in an industry affecting commerce within the meaning of Sections 3(5), 3(11) and 3(12) of ERISA, 29 U.S.C. §§ 1002(5), (11), (12).

## Statement of Claim

7. For many years, Datatel was a participating employer in the Plaintiff Pension Fund, but Datatel completely withdrew from participation in the Pension Fund in late 2017 due to the sale of its assets to Wise and consequent cessation of all manufacturing activities.

8. When a participating employer in a multiemployer pension plan completely withdraws from participation in that pension plan at a time when the plan is underfunded (i.e., does not have sufficient assets to pay vested benefits as determined through the application of actuarial principles), the pension plan trustees are required by ERISA (as amended by the MPPAA) to assess withdrawal liability against that employer and demand payment of that withdrawal liability on the payment terms authorized by the statute.

9. By letter dated July 2, 2018, the Pension Fund wrote to Datatel advising it that the Fund had assessed $999,895.20 in withdrawal liability against the company, and demanding payment of that withdrawal liability in 240 equal monthly installments of $4,166.23 per month.

10. By letter dated July 21, 2018, Datatel wrote back to the Fund stating, in pertinent part: "In early October, 2017, Datatel . . . closed on an asset sale that resulted in the immediate and complete closure and ceasing of all manufacturing activities at our single facility in Monaco, PA. . . . For the past nine months, we have been finalizing all matters to include the payment of all current debts as of the date of our last day of business (September 29, 2017). This process will be concluded in the very near future. There are a few open items with an unknown exposure that we expect to have finalized shortly. It is my estimate that there will be approximately $50,000 of net asset value remaining when we conclude this process." Datatel has not made any payments to the Pension Fund towards its assessed withdrawal liability.

11. The corporate entity that purchased Datatel's assets is Wise.

12. By letter dated October 2, 2018, the Pension Fund wrote to Wise, asserting a claim against Wise for payment of the Fund's prior $999,895.20 withdrawal liability assessment against Datatel under the successor liability doctrine explained and applied in various judicial decisions, and making a demand for payment of that withdrawal liability in 240 equal monthly installments of $4,166.23 per month, with the first monthly payment to be made by November 1, 2018 and the remaining payments to be made on the first day of each succeeding month.

13. Wise has failed and refused to make any withdrawal liability payments to the Fund.

14. Because it has failed to make payments in accordance with the payment schedule set forth by the Fund, Wise is delinquent on its withdrawal liability payment obligation to the Fund.

15 An asset purchaser like Wise assumes the withdrawal liability of the asset seller as a matter of law where: (a) there is substantial continuity in the operation of the asset seller's business before and after the asset sale, such that it is proper to consider the asset purchaser a successor to the asset seller's business; and (b) the asset purchaser had actual or constructive notice that the seller would be assessed withdrawal liability upon the consummation of the asset sale. Both requirements are satisfied here.

16. Wise has fully continued Datatel's pre-asset-sale business operations by, among other things, selling the same products to the same customer base previously serviced by Datatel, and employing Datatel's President and former owner Allen J. Simon to help service and retain that customer base and expand it if possible.

17. The press release posted on Wise's webpage, announcing the acquisition of Datatel's assets, states that "The Wise division, operating under the brand and name of Datatel,

prints business documents and is a nice compliment to Wise's current business. After close, all phone numbers and email contacts will not change and customers are to contact Datatel in their usual manner. Former owner, Allen Simon, will continue his employment with Wise in a business development role working with Datatel customers."

18. On information and belief, Wise had actual knowledge that Datatel would be assessed withdrawal liability upon the consummation of the asset sale. As the parties' asset purchase agreement reflects, Wise knew at the time of the asset sale that Datatel was a participating employer in an employee pension plan covered by ERISA. Moreover, Wise is a large and sophisticated company with prior experience in purchasing other companies; indeed, earlier in 2017, prior to its purchase of Datatel, Wise purchased the assets of another company by the name of Brandmark, Inc. Given this knowledge, sophistication and prior experience, before purchasing Datatel, Wise presumably conducted a reasonably comprehensive "due diligence" examination that, for the reasons detailed in paragraph 19 below, would readily have disclosed the information indicating that Datatel was a participating employer in an underfunded multi-employer pension plan, and therefore that any withdrawal from that plan would result in an assessment of withdrawal liability.

19. In any event, and at a minimum, Wise was on constructive notice that Datatel would be assessed withdrawal liability upon the consummation of the asset sale. Under a constructive notice standard, an asset purchaser is deemed to have notice of any facts that it would have discovered through the exercise of reasonable care or diligence. Had Wise exercised reasonable care or diligence in this matter, it would readily have discovered that the employee pension plan in which Datatel was a participating employer was a substantially underfunded multiemployer pension plan, such that Datatel would be assessed withdrawal liability by the

5

Case 3:18-cv-01372 Document 1 Filed 12/17/18 Page 5 of 8 PageID #: 5

Pension Fund upon the consummation of the asset sale. Indeed, that information would have been readily available to Wise from various sources, including but not limited to Pension Fund personnel and the Pension Fund's website. Moreover, Wise could readily have received an estimate of that withdrawal liability assessment by contacting the Pension Fund directly.

20. Requiring Wise to pay Datatel's withdrawal liability in these circumstances would further the purposes behind ERISA, as amended by the MPPAA, and would not be unfair or inequitable to Wise in any respect. Conversely, a failure to require Wise to pay Datatel's withdrawal liability would be contrary to those statutory purposes.

21. The Fund's Amended and Restated Agreement and Declaration of Trust provides that, in the event that a Court awards judgment to the Fund against an Employer that is found to be delinquent in payment of withdrawal liability, that Employer shall also pay to the Fund liquidated damages in the amount of 20 percent of the delinquency but not less than accrued interest on such delinquency.

22. The Fund's Amended and Restated Agreement and Declaration of Trust further provides that the Trustees are authorized to fix the amount of interest that is applied to overdue and delinquent withdrawal liability installment payments and other contributions. At all times relevant to this Complaint, the interest for such late payments has been set at 12% per year.

Cause of Action

23. Plaintiffs reassert all of the facts alleged in paragraphs 1 through 22.

24. The $999,895.20 withdrawal liability assessment made by the Pension Fund against Wise is a legally proper and valid assessment that is fully binding on Wise under ERISA, as amended by the MPPAA. By failing and refusing to make the withdrawal liability payments demanded by the Pension Fund, Wise has acted contrary to law and subjected itself to the instant

action for appropriate legal and equitable relief, including but not limited to a money judgment in the full amount that Wise is delinquent on its monthly withdrawal liability payments.

25.     29 U.S.C. § 1451(b) provides that "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." Accordingly, under 29 U.S.C. § 1132(g)(2), the Pension Fund is entitled to recover, in addition to the full amount that Wise is delinquent on its monthly withdrawal liability payments: (a) 12% accrued interest on each delinquent monthly payment, as provided for in the applicable pension plan documents; (b) liquidated damages determined as the greater of either 20% of the delinquent payments, or 12% interest on each delinquent payment accruing from its due date, as provided for in the applicable pension plan documents; (c) Plaintiffs' reasonable attorneys' fees and costs in this action; and (d) such other legal or equitable relief as the Court deems appropriate.

<u>Prayer for Relief</u>

WHEREFORE, Plaintiffs request the following relief:

a.  A declaratory judgment that Wise is liable to the Pension Fund for withdrawal liability in the amount of $999,895.20 under ERISA, as amended by the MPPAA;

b.  A money judgment consisting of the full amount that Wise is delinquent on its monthly withdrawal liability payments to the Pension Fund as of the date of issuance of that judgment; 12% accrued interest on each delinquent monthly payment; and 20% in liquidated damages on each delinquent monthly payment;

c. A permanent injunction requiring Wise to make timely payment of all monthly withdrawal liability payments that come due after the issuance of the above-described money judgment;

d. Plaintiffs' reasonable attorneys' fees and costs in this action; and

e. Such other legal or equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Michael Hamilton*
Michael Hamilton, Esq.
TN Bar # 010720
Provost Umphrey Law Firm, LLP
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215
Telephone: (615) 297-1932
Fax: (615) 297-1986
mhamilton@pulf.com

Andrew D. Roth, Esq.*
Bredhoff & Kaiser, PLLC
805 15th Street N.W., Suite 1000
Washington, DC 20005
Telephone (202) 842-2600
Fax: (202) 842-1888
aroth@bredhoff.com

Attorneys for Plaintiffs

*Application for admission pro hac vice forthcoming.

December 17, 2018

*A copy of this Complaint will be served on the Pension Benefit Guaranty Corporation by certified mail, as required by 29 U.S.C. § 1451(g).